## CITY COUNCIL OF LAFAYETTE vs. HOLLAND ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The plea of *res judicata* in a petitory action cannot be sustained by the proceedings in a possessory one. A judgment in a possessory action is no bar to an action in revendication, although it be between the same parties, and for the same object.

No particular form or ceremony is necessary in the dedication of land to public use. Lord Ellenborough decided, that when the " owner throws open a passage, and neither marks by any visible distinction, that he means to preserve all his rights over it, nor excludes or prohibits persons from passing through it, he *shall be presumed to have dedicated it to the public.*"

So where the plan of a Faubourg exhibits a front street, called *Levee street*, running parallel with the levee, but leaving *a space* between, on which no specific number *of feet are marked*, and without any particular designation on the plan, it will be *presumed* to be dedicated to the public use, and required to be kept open and free for this purpose.

This is an action by the City Council of Lafayette, to compel J. H. Holland, G. Depassau, and J. Gleize, to relinquish *all claim* to a strip of ground in *front* of their lots in the city of

Lafayette, lying between Levee street, on which their lots front, and the levee. The City Council claims the administration of this space as a public place, for the use of the public, and require that it be kept open and used as such.

EASTERN DIS.
*May,* 1841.

CITY COUNCIL OF
LAFAYETTE
*vs.*
HOLLAND ET AL.

The defendants pleaded the exception of *res judicata,* founded on two suits, in which these parties had obtained judgments against the corporation in two possessory actions, putting them in possession of this same strip or space of ground. On the merits they pleaded the general issue.

Upon these pleadings and issues the case was tried.

The original plan, when the Nuns laid off their plantation into a faubourg and town lots, in 1810, together with the deeds or acts of sale from the Superieur Nuns to Monsieur J. Deville Degoutin Bellechasse and to Pierre Derbigny, under whom the defendants claim, were produced in evidence.

The principal question to be decided, was whether this *open space,* which appeared on the original plan, *outside* of Levee street, and between it and the levee, was public, by dedication on said plan to and for the *public use?* The defendants claimed it as riparian owners of the lots fronting on Levee street, opposite to the space.

The District Judge decided, that the presumption of an intended dedication was negatived,

1. By the width of the high road or Levee street, marked on the plan, which is 60 feet wide, French measure.

2. By the express declaration of the Nuns in their deeds of sale to the defendants' vendors, that the purchasers of front lots should be seized of the property as riparian proprietors.

3. By the clause in said deeds, reserving to the purchasers of back lots the right of taking earth from the batture.

There was judgment in favor of the defendants, without prejudice to the legal control of the plaintiffs, under their act of incorporation, over the streets, levees, battures and wharves.

The plaintiffs appealed.

*McKinney, Preston* and *Eustis,* for the plaintiffs and appellants.

EASTERN DIS.
*May*, 1841.

CITY COUNCIL OF
LAFAYETTE
*vs.*
HOLLAND ET AL.

*Strawbridge*, for the defendants.

*Garland, J.* delivered the opinion of the court.

The plaintiffs alledge, that by law they have been charged with the care, regulation, control and possession, for the public use, of the streets of the city of Lafayette, and the levee and landing in front thereof. That the lower part of that city was formerly a plantation owned by the Ursuline Nuns, who on the 18th of September, 1810, made a plan of the same, divided into *squares* and streets, which squares they sold in conformity therewith. By the plan, the public road or front street, called Levee street, is stated to be sixty feet, French measure, in width, and the levee and landing extending from said street to the river. The petition further states, that the space between the front street and the water's edge was destined for a levee and landing, and has not been increased by alluvion. The whole of the space was then necessary for those purposes, and absolutely indispensable at this time. It is further stated, that all the space between the street and the river constitutes the bank of the same, and is by law subject to public use, and the corporation are the administrators of that use, and bound to protect and preserve it. It is also stated, that the defendants have taken possession of the space between the street and the river, claim it as their private property, deny the right of the public, and appropriate the ground to their private use, and the petitioners are unable, by their officers to keep said space open, and free for persons to pass, for the landing of produce and merchandize, and reshipping the same, without great inconvenience. They pray, that the use of all the ground between the street and the river be adjudged to be public and common to all persons. That the plaintiffs have the charge and regulation of said use, and that no private and exclusive use thereof is vested in the defendants; and it is further asked, that the latter be forever enjoined from such private use, and from obstructing and impeding the petitioners in the regulation and

control of said space, for the purpose of keeping it free' and common for a levee and public landing.

The defendants for answer say, that all the matters in controversy have been adjudged in previous suits, in which judgments are to be found in 7 La. Rep. 1; 9 Idem, 149. They further deny all the matters alleged, and say, they, and those, under whom they claim, have been in peaceable possession of the premises more than thirty years.

The plea of *res judicata* is easily decided. The actions mentioned were possessory in their form and nature, and do not in any manner affect the rights of either party, though the defendants insist on some of the reasons assigned by the court, for the judgments rendered, as sustaining them in their claims. It is well settled, that a judgment in a possessory action is no bar to an action in revendication, although it relates to the same object.

The plaintiffs claim, as being the administrators of a place or space, set apart by the Nuns, when they laid out their land into streets and squares, for public use ; or as being subject to a legal servitude, constituting the bank of the river and public road, and liable to be taken to construct a levee on. The defendants claim as owners by direct conveyances from the Ursuline Nuns, through Bellechasse and Pierre Derbigny.

On the 15th of September, in the year 1810, the Ursuline Nuns caused their land, then a rural estate, to be laid out into large lots, of irregular forms, with streets (or chemins, as they are called in the sales), separating them, which are stated in the deeds of sale, as being sixty and forty feet, French measure, in width. On the plan, which was made, the streets are represented and named. In front of the two lots Nos. 5 and 11, and between them and the levee, is laid out a broad street, the width of which is not stated on the plan, but both, plaintiffs and defendants say, it is sixty feet wide, French measure. Lot No. 11 was sold to Derbigny, under whom Holland claims, and is described as having two hundred and seventy-six feet "face a la grande route," which means the street in front ; and is

EASTERN DIS.
*May,* 1841.

CITY COUNCIL OF
LAFAYETTE.
*vs.*
HOLLAND ET AL.

further described by other distances and streets as bounding it. The lot No. 5, sold to Bellechasse, under whom Dupassau and Gleize hold, is described as being " *sur la rive gauche du fleuve,*" containing three hundred and ninety-five feet "*face à levee,*" and is further described by a depth of seventeen hundred and fifty-four feet, bounded by various streets. These large lots have since been subdivided into smaller portions, and are now held by different persons, though the lots fronting on the street, belong principally to the defendants.

In each of the sales to Bellechasse and Derbigny, is the following clause : " Les dames venderesses établissent pour clauses et conventions générales et expresses des ventes partielles qu'elles font, tout présentement de leur habitation, que les acquéreurs des trois premiers lots en profondeur à partir du fleuve, seront chargé de l'entretien de la levée et du grand chemin, et jouiront en commun des droits des propriétaires riverains ; qu'ils seront néanmoins tenus de laisser prendre sur la batture la terre dont les propriétaires des lots plus éloignés du fleuve pourront avoir besoin pour remblayer leurs terrains, ou pour y batir ; que les chemins qui séparent les lots, seront entretenus par les propriétaires des terrains devant lesquels ils sont situés." Under these sales the defendants claim to be riparian proprietors. and set up claim to all the ground between their fronts on the street and the edge of the water, except sixty feet French measure for the street, and forty feet for the levee, and say, there is more than sixty French feet between the line of their lots on the street and the levee, which leaves a space between the street and the levee, which belongs to them exclusively ; they have it in possession, have had it for a number of years, with occasional interruptions, and have been confirmed in their possession by the two judgments of this court, which they presented to sustain their plea of res judicata.

The plaintiffs, by their act of incorporation and other acts of the Legislature, are charged with the control of the streets, levees, battures, wharves and other public places, or places subject to public use, and can exercise such authority in rela-

tion to them, as has been conferred. Acts of 1833, p. 145, sec. 7, 8, 9, 10, 12; Acts of 1830, p. 114 and 115.

But as the defendants are in possession, it is incumbent on the plaintiffs, to show a dedication to public use of all the ground between the line of the street most distant from the river and the levee. They cannot hold or claim it in any other manner, as it is not pretended, they have a deed or sale. It is well settled, that no particular form or ceremony is necessary in the dedication of land to public use. 6 Peters, 440. Municipality No. 2, vs. the Orleans Cotton Press Company (ante 122).

Lord Ellenborough, in the case of Rex vs. Lloyd, held, that if the owner of the soil throws open a passage, and neither marks by any visible distinction, that he means to preserve all his rights over it, nor excludes persons from passing through it by positive prohibition, he shall be presumed to have dedicated it to the public; 1 Campbell, 262. This may be considered by many as going very far, but the facts in this case create a stronger presumption than in that, and we think, make it certain. The Nuns exhibit a plan of their property, upon which a street, called *Levee street*, is exhibited, running parallel with the levee, and according to the defendants' statements, but a few feet from it. No specific number of feet are *marked on the plan*, as exhibiting its width. On each side, close to the front of the lots and to the levee, lines are drawn, which seem to represent side-walks, and the same lines are drawn on all the other streets on the plan. The object of the Nuns, in subdividing their property, was to convert it into town lots, with a view to its becoming an addition to the city of New Orleans, to which it was finally annexed under the name of one of the unincorporated Faubourgs. All the batture outside the levee was made, by deeds, a common property, and every owner of property in the three original lots or squares in depth was a joint riparian proprietor, and even the owners of lots more distant have a right to take earth from the batture, to fill up their lots, and for other purposes. A difference is made as to the persons bound to keep up the levee and street, parallel with

EASTERN DIS.
*May*, 1841.

CITY COUNCIL OF
LAFAYETTE.
*vs.*
HOLLAND ET AL.

No particular form or ceremony is necessary in the dedication of land to public use. Lord Ellenborough decided, that when the "owner throws open a passage, and neither marks by any visible distinction, that he means to preserve all his rights over it, nor excludes or prohibits persons from passing through it, he *shall be presumed to have dedicated it to the public.*"

So where the plan of a Faubourg exhibits a front street, called *Levee street*, running parallel with the levee, but leaving *a space* between, on which no specific number *of feet are marked,* and without any particular designation on the plan, it will be *presumed* to be dedicated to the public use, and required to be kept open and free for this purpose.

EASTERN DIS.
May, 1841.

CITY COUNCIL OF
LAFAYETTE.
vs.
HOLLAND ET AL.

it, from those bound to keep up the other streets. There cannot be a doubt, it was the intention of the Nuns, that the batture should be common, if not to the public, to the citizens of the faubourg; the levee was by law public, the street was by dedication and law also public; and it is difficult to believe, it could have been or was the intention of those, granting all these uses and rights, to leave a slip of ground, between the street or public highway and the levee and batture beyond it, which would greatly embarrass, if not entirely deprive both the public and the citizens of the Faubourg, of the enjoyment of the benefits intended to be conferred. As a general rule, the public highways are parallel to or run alongside the levees, adjoining them, and the action of the Legislature is based on that assumption, and in most of our legislative enactments, roads and levees are treated as being in close connection. 1 Moreau's Dig. 650, 655; Acts, 1829, p. 76 et seq. Sec. 9, &c. Martin's Dig. vol. 2, p. 598. We are aware, there are exceptions to the rule, and when they are shown, we shall pay a proper regard to the cases, and regulate our judgments by the circumstances. We have no doubt, there was a full and complete dedication by the Nuns for public use, of all the space in front of the lots or squares Nos. 5 and 11, to the levee, and that the defendants have no title or right, to claim any portion of it, and further, that they are only riparian proprietors in common with the owners of property in the three original lots or squares in depth, as represented on the plan, under which they hold. The plan and the sales to Bellechasse and Derbigny, both passed within a week after the plan was made, show, the whole space was dedicated, notwithstanding the general declaration, of the streets being forty and sixty feet in width. That they were not exactly so, the plan itself shows. St. Mary street, which runs perpendicular to the levee, is represented as forty-five feet wide, and St. Andrew street, next above it, is stated to be forty-three feet in width.

But, say the defendants, this court has decided that the *locus*
*in quo* is not a part of the high road or street, neither does it
cover the levee or tow-path; consequently it may be the sub-
ject of private ownership; 7 La. Rep., 6; 9 Idem, 153.    It is
true this court has said so, in two suits between these parties,
but in actions essentially different in form and substance ; and
had this not been said, this case would have been too clear to
need much argument to sustain it.

It therefore becomes necessary to examine the circumstances
under which these declarations were made.    Each of the pre-
sent defendants, several years past, instituted actions against an
officer of the present plaintiffs for dispossessing them of the
space now in dispute.    They proved by different individuals,
nearly all their tenants or agents, that after allowing sixty feet,
French measure, for a street, that a space of about twenty feet
would remain between it and the levee, of which the present
defendants had had possession for more than a year.    The pre-
sent plaintiffs (then defendants) offered in evidence the plan of
the Nun's Faubourg, now before us, and the sale from them to
Bellechasse, to show that the property in question was not pri-
vate property, " but street and levee."    To the reception of
this evidence, the plaintiffs (now defendants) objected on the
ground that their actions were possessory, and titles could not
be enquired into.    The District Judge, who tried those cases,
admitted the evidence and the plaintiffs (now defendants,) took
their bills of exception.    The evidence was admitted in the
District Court to show the place was public and that such a
possession as would maintain the action could not be had of it.
In this court, the opinion of the District Judge was overruled
and the evidence rejected.    Judge Matthews, in giving the opi-
nion of the court, says the action " is simply possessory," and
the questions whether the defendants (then plaintiffs) be real
owners or not, whether the place in dispute be public or appro-
priated to public use, are questions that depend on an investi-
gation of titles and cannot be permitted in a possessory action ;
7 La. Rep., 6.

EASTERN DIS.    One of the present judges, in giving the opinion of the court
May, 1841.    in the case of Gleisse et al. vs. Winter, &c., says " the ques-
CITY COUNCIL OF  tion whether it be in fact the property of the plaintiffs, or whe-
LAFAYETTE.
vs.      ther it has been devoted to public use, is in our opinion essen-
HOLLAND ET AL.  tially one of title, and the Code of Practice, art. 53, declares
that in possessory actions no testimony shall be admitted ex-
cept as to the fact of the possession or as to the disturbance,
and all testimony relative to property *shall be rejected.*"  It was
under these circumstances, this court declared the *locus in quo*
to be susceptible of private ownership; but it is believed such
a declaration would not have been made, if the court had not felt
compelled to confine its judgment to the simple question of *posses-
sion and disturbance.*  With all the evidence *then* before the
court, *now before us*, together with the plan and sales, we have no
hesitation in declaring that all the space in controversy forms a
portion of the public road or street and that the defendants have
no such title as justifies their appropriating any portion of it to
their exclusive use.  In addition to the evidence before us, a
majority of the members of the court have visited and inspect-
the premises, which confirms them in the correctness of the con-
clusions drawn from the evidence.

The judgment of the District Court is therefore annulled,
avoided and reversed, and this court proceeding to give such
judgment as, in their opinion, ought to have been given in the
court below, do order, adjudge and decree, that the plaintiffs re-
cover of and have judgment against the defendants for the
space or piece of ground in contest between them, to be held
and possessed by the plaintiffs and administered for the public
use as a public highway and levee, subject to the laws and re-
gulations relative to public places or places subject to public
use.  The claim of the defendants to the exclusive use and
right to the premises is rejected with costs in both courts.