EL MUNICIPIO DE VEGA BAJA, DEMANDANTE Y APELANTE, *v.* SMITH, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre perturbación.

No. 1746.—Resuelto en abril 29, 1918.

Resuelto en reconsideración en julio 10, 1919.

PERTURBACIÓN—CAMINOS PÚBLICOS—DEMANDA—ALEGACIONES SUFICIENTES.—Estudiados los hechos alegados en la demanda presentada en este caso para que cesare la perturbación causada por el cierre de un camino público, *se resolvió:* que aun cuando dicha demanda no es de las que pueden recomendarse como alegación modelo en pleitos de esta clase, sin embargo, tales hechos bien probados establecerían *prima facie* que el camino fué consagrado y abandonado al uso del público por los anteriores dueños de la finca y que el público aceptó tal consagración (*dedication*).

ID.—ID.—CEMENTERIOS—CONSAGRACIÓN O ABANDONO AL USO PÚBLICO.—El principio de la consagración de caminos públicos ha sido reconocido por la legislatura, cuando menos respecto a terrenos dedicados a cementerios y caminos municipales, al aprobar el inciso 37 del artículo 102 de la Ley de Evidencia y el número 4 del artículo 65 de la Ley Municipal; por lo que, un municipio. tiene derecho a exigir que se abra de nuevo y deje expedito un camino municipal consagrado o abandonado al uso público por un período de tiempo de tal duración que la conveniencia y comodidad del público habrían de ser afectadas por la interrupción de su goce y disfrute.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. José de J. Esteves, Cay. Coll y Cuchí y Gustavo Cruzado.*

Abogado de la apelada: *Sr. J. R. F. Savage.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El Municipio de Vega Baja estableció esta acción sobre cese de perturbación y para que se deje al libre uso un camino público.

La corte de distrito desestimó la demanda después de haber sostenido una excepción previa a la demanda enmendada por el fundamento de falta de hechos suficientes a constituir una causa de acción.

Las alegaciones esenciales son las siguientes:

"Que en el término jurisdiccional de Vega Baja, Puerto Rico, existe un camino vecinal denominado 'Pugnado Afuera Saliente,' que empezando en otro del barrio Río Arriba, atraviesa el barrio Pugnado Afuera Saliente y empalma con la carretera insular de Vega Baja a Morovis, en el hectómetro seis del kilómetro uno; que ese camino pasa por una finca de 93 cuerdas de terreno, mas o menos que pertenece a la demandada y está sita en los barrios de Río Abajo y Pugnado Afuera, entrando el camino en la referida finca, con la citada dirección, por la colindancia con otra finca de la "Vega Baja Fruit Company" y saliendo por la colindancia con otra finca de José Vega; que ese camino ha existido siempre como camino vecinal, respetado por los anteriores dueños de la finca que ahora es de la demandada, habiendo estado al servicio del público por más de 20 años y perteneciendo al municipio de Vega Baja por derecho de uso constante, estando inscrito en unión de otros al folio 66 del libro correspondiente en el Departamento del Interior; que la demandada, Mrs. Smith, sin derecho a ello, ha cerrado el referido camino y se niega a consentir el paso del vecindario por él dentro del trayecto que cruza su finca, e insiste en su negativa a pesar de los requerimientos que le han sido hechos para que consienta el libre tránsito que siempre ha existido; que esa conducta de la demandada interrumpe el uso legal de otras propiedades de aquel vecindario; impide el cómodo goce de su vida y de sus bienes, y constituye una perturbación (*nuisance*) para el municipio demandante y, en especial para los vecinos José López, Ramón Montalvo, Juan Eusebio García, Hermenegildo Serrano, Diego López, Félix Colón, Paulino Portela, Francisco Cabrera, Camilo Cabrera y otros."

Al revocar este tribunal la sentencia de la corte de dis-

trito, dijimos en la opinión de fecha 29 de abril de 1918 lo siguiente:

"Estos hechos bien probados establecerían *prima facie* que dicho camino fué consagrado y abandonado al uso del público por los anteriores dueños de la finca, hoy propiedad de la demandada, y que el público aceptó tal consagración (*dedication*).

"Aun en ausencia de toda disposición estatutoria parecería que no existe razón alguna por la que no debiéramos guiarnos por la misma regla sentada en casos de esta índole por otras cortes americanas.

"Además, en adición a los amplios poderes de equidad conferidos a las cortes de justicia en el artículo 7 del Código Civil, el principio envuelto en este caso ha sido reconocido y acatado por nuestra Legislatura, cuando menos respecto de terrenos dedicados a cementerios y caminos municipales, al aprobar el inciso 37 del artículo 102 de la Ley de Evidencia y el No. 4 del artículo 65 de la ley 'Estableciendo un sistema de gobierno local, y para otros fines,' de 8 de marzo de 1906."

El apelado presentó una moción de reconsideración de la sentencia por los fundamentos, primero, de haberse celebrado la vista del caso y resuelto dicho caso únicamente por cuatro jueces de esta corte y, además, porque el demandante deseaba someter la cuestión al tribunal en pleno; segundo, que la doctrina de dedicación de bienes inmuebles a usos públicos, sentada por esta corte no había sido discutida por ninguna de las partes en este caso, en sus alegatos o en el acto de la vista, y siendo el apelado de opinión de que tal doctrina no es de aplicación en Puerto Rico deseaba discutir esta cuestión ante el tribunal en pleno; tercero, que la doctrina de dedicación es desconocida en la ley civil, siendo una creación de la ley común de Inglaterra y, por tanto, la aplicación de esta doctrina en Puerto Rico priva a la apelada de su propiedad sin el proceso debido de ley asegurándole por la enmienda 5ª. de la Constitución de los Estados Unidos y por el Código Civil de Puerto Rico; y, cuarto, que aun cuando dicha doctrina fuera aplicable en Puerto Rico

las alegaciones de la demanda no son suficientes para determinar una causa de acción.

Teniendo en cuenta este tribunal la importancia de la cuestión envuelta, que la doctrina en cuestión no fué ampliamente discutida en el acto de la vista y además por existir alguna duda en cuanto a la suficiencia de la demanda, esta moción de reconsideración fué declarada con lugar y el caso sometido nuevamente a la consideración de esta corte.

El apelado cita en su alegato el tomo 13 de Cyc., página 437 en el sentido de que la doctrina de dedicación (desconocida por la ley civil), es un modo de crear servidumbres públicas de la ley común.  Después sigue una cita del mismo tomo (página 439, nota 16) donde se dice que "la doctrina de prescripción como aplicable a servidumbres públicas nunca parece haber sido reconocida en Inglaterra.  El origen de las servidumbres de uso inmemorial se funda en la costumbre," etc. y se citan varios casos ingleses.

También se llama la atención a la regla general que se dice es un elemento de la doctrina de dedicación y que guarda gran relación con la cuestión que ahora consideramos en la que se dice que por el abandono del público del uso de los bienes dedicados, éstos vuelven al dominio del dueño que hizo la dedicación.  En relación con esto se dice también que bajo la ley civil los bienes del dominio público cuando dejan de estar destinados al uso general pasan a formar parte de los bienes de propiedad del Estado, y cita el artículo 341 del Código Civil Español, a Manresa sobre la misma cuestión, y el caso de *Mitchell* v. *Bass,* 33 Tex. 259.

También se sugiere que el inciso 37 del artículo 102 de la Ley de Evidencia se refiere única y exclusivamente a cementerios, no habla de caminos y no debe dársele el alcance, de que comprende a estos últimos.

En cuanto a la sección 65 de la Ley Municipal se alega que no puede dársele efecto retroactivo aun cuando se le considere que establece desde y después de la fecha de su

publicación la doctrina de dedicación. El argumento es que estando envuelta en la dedicación la cuestión de intención no puede decirse que una persona tuvo la intención de crear una situación jurídica que en el momento el derecho no reconocía.

Se alega, además, que la Ley Municipal habla de los caminos que por el uso han venido a ser caminos; que este tiene que interpretarse de acuerdo con las leyes anteriores a la Ley Municipal; que según las Siete Partidas, si bien podía adquirirse por la prescripción una servidumbre de paso discontinua, sin embargo era necesario en tal caso demostrar la existencia de la servidumbre desde tiempo inmemorial *Díaz* v. *Vázquez*, 19 D. P. R. 1155; y que la doctrina de las Siete Partidas fué modificada por el artículo 539 (546) del Código Civil el cual dispone que las servidumbres no aparentes y las discontinuas, sean o no aparentes, podrán adquirirse solamente en virtud de título. El tomo 5 página 839, de la Encyclopedia Jurídica Española, los Comentarios de Manresa al artículo 344 del Código Civil Español, la ley de carretera de 1877 (hecha extensiva a Puerto Rico en 1886), la ley de expropiación forzosa para Cuba y Puerto Rico de junio 13 de 1884, y la ley de caminos públicos de Puerto Rico de 1881 se citan para demostrar las varias subdivisiones de los caminos ordinarios o carreteras reconocidos por España y la necesidad como requisito previo para incautarse de la propiedad privada para fines públicos de una declaración de utilidad pública y el requisito de tener que demostrarse la necesidad de la incautación y la determinación y pago de la debida indemnización.

El artículo 328 del Código Civil el cual prescribe que "los bienes de uso público en Puerto Rico y sus pueblos comprenden los caminos insulares y los vecinales, las plazas, calles, puentes y aguas públicas, paseos y obras públicas para uso general costeados por dichos pueblos o por el Tesoro de Puerto Rico  *  *  * " se cita con el fin de determinar a

quién pertenece un camino bajo la ley hoy vigente, así como bajo la legislación antigua, debiendo tenerse en cuenta la procedencia de los fondos para su construcción y conservación. Se cita también el caso de *Díaz* v. *Vázquez, supra* en relación con este punto.

El artículo 539 del Código Civil (532) del Código Español se cita también en relación con la alegación de que una servidumbre de paso es una servidumbre discontinua. *Albarrán* v. *Paz,* 18 D. P. R. 970, 971; *Díaz* v. *Vázquez,* 19 P. P. R. 1155, 1158; *Gierbolini* v. *Sucesión Rodríguez,* 23 D. P. R. 871; *Torres et al.* v. *Plazuela Sugar Company,* 24 D. P. R. 479, son casos que se citan en igual sentido en relación con esta cuestión.

En apoyo de la proposición de que los hechos expuestos en la demanda no constituyen una causa de acción el apelado se funda principalmente en el caso de *Farr* v. *Wheelwright C. Co.,* 163 Pac. 256-57, aunque se cita el tomo 37 de Cyc. páginas 18, 19 y 34 sobre la cuestión de la suficiencia de la alegación del período de veinte años y por guardar relación con la cuestión relativa a la naturaleza adversa del uso.

Ciertamente que en esta jurisdicción la ley común no es una frase que debemos oir como un conjuro, y por otro lado tampoco debemos alarmarnos por la mera circunstancia de que cualquier doctrina en particular, por estar basada en la justicia y la razón universal, resulte tener su origen en la ley común. Al confrontarnos con un caso que no esté previsto en nuestro Código Civil u otra disposición legislativa no debemos temer los males ni rechazar las bondades que pueden hallarse en los principios de la ley común u en otras fuentes de la humana experiencia. Pocos tribunales se hallan menos embarazados por los precedentes, o en materias no previstas por el estatuto, tan libres para seguir los dictados de la conciencia y del sentido común que los tribunales de esta isla. Levantar una sólida estructura sobre los principios fundamentales que tan amenudo se encuentran arraigados lo mismo

en la jurisprudencia americana que en la española que comprenda los mejores elementos de los dos grandes sistemas, y que en tanto sea posible quede libre de los defectos de ambos, es nuestro especial privilegio si solamente aprovechamos la oportunidad que se nos presenta.

"  \*   \*   \* Al lado de la doctrina de la *buena fe* tal como ha sido definida por el pretor romano puede colocarse la de la 'conciencia' o 'equidad' según ha sido entendida por el jurisconsulto inglés." Taylor, La Ciencia de la Jurisprudencia, página 509.

En la misma página de la obra que acabamos de mencionar Lord Cottenham refiriéndose a la ley común y a la jurisdicción de equidad del Canciller y, desde luego, hablando sin la sanción de ninguna disposición legislativa, se expresa como sigue:

"  \*   \*   \* Creo que esta corte está en el deber de adaptar su práctica y curso de los procedimientos al actual estado de la sociedad y no por circunscribirse demasiado a la letra de la ley, negarse a hacerse justicia y a hacer valer coactivamente aquellos derechos para los cuales no se ha concedido otro remedio."

En el artículo 7 de nuestro Código Civil, puede verse una curiosa paráfrasis del pasaje que acabamos de citar. Dicho artículo es como sigue:

"El tribunal que rehuse fallar a pretexto de silencio, obscuridad o insuficiencia de la ley o por cualquier otro motivo, incurrirá en responsabilidad.

"Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho y los usos y costumbres aceptados y establecidos."

El segundo párrafo de su equivalente, el artículo 6 del Código Español, no era tan amplio, pero disponía que—

"Cuando no haya ley exactamente aplicable al punto controvertido se aplicará la costumbre del lugar; en su defecto, los principios generales del derecho."

Manresa al comentar esta cuestión se expresa como sigue:

"Las funciones del poder, si bien son distintas, no se hallan separadas de una manera absoluta. En ocasiones el poder legislativo ejerce funciones judiciales, cuando la alta cámara se constituye en jurado, y en otras se confieren al poder o al orden judicial atribuciones de carácter verdaderamente legislativo, como en este artículo acontece. Se ha considerado preferible que, en los casos en que la ley calla o es deficiente, establezca el juez la regla de derecho aplicable al caso sometido a su fallo, o que, si es oscura, la interprete, a que la cuestión quede en suspenso, mientras el legislador formule el derecho positivo o dé su interpretación auténtica."

Y otra vez después de discutir diferentes aspectos de la cuestión el referido comentarista se expresa en los siguientes términos:

"En último término deben aplicarse los principios generales del derecho a que era necesario dar fuerza legal desde el momento en que se obligaba a los tribunales a fallar en todos los casos, y puede haber algunos en que no exista disposición legal, costumbre ni jurisprudencia. Acepte o no la ley el derecho científico, éste no podrá prescribirse nunca. Como dice un distinguido jurisconsulto, 'la ciencia siempre analizará, comparará, hará resaltar las concordancias, conciliará las antinomias, resolverá las cuestiones que el sentido de la ley ofrezca; y la doctrina jurídica se formará más o menos rápidamente, o con más o menos lentitud, pero por necesidad; constituirá el criterio general, formulará o proclamará los axiomas de derecho, lo mismo los que pudiéramos llamar tradicionales, que los que de nuevo se elaboren, según el distinto espíritu que se infiltre en las instituciones, y gobernará las conciencias jurídicas con igual autoridad que el precepto del legislador. Desconocerlo es acusar perfecta ignorancia de lo que es en realidad la vida del derecho; negarlo es tener los poderes que hacen las leyes la ambiciosa pretensión de omnisciencia y omnipotencia, no sólo legal, sino real y verdadera * * *.'"

"La aplicación del derecho natural es por su esencia una facultad amplia e indeterminada, que procuraron limitar en Roma la célebre ley de citas de Valentiniano III y en España una Pragmática de los Reyes Católicos; pero está conforme con las tendencias modernas de extender al arbitrio judicial, así en el orden penal como en el civil,

y concuerda con lo establecido en los códigos civiles de Portugal, Italia, Méjico y Perú.''

Que la doctrina de dedicación o de que la ley común se basa en la costumbre no es una objeción insuperable. La costumbre asimismo es la base y vida de la ley civil. Dejando a un lado la cuestión de la pretendida codificación que de tiempo en tiempo ha tenido lugar con los resultados obtenidos, el proceso de evolución es el mismo en ambos sistemas. De paso y por guardar relación en cierto modo con este punto se hace referencia a Scaevola, Código Civil, (Apéndice), páginas 14 a la 17 inclusive.

Los jurisconsultos que gradualmente levantaron la sólida estructura de la jurisprudencia británica no necesitaron ningún estímulo o ayuda legislativa. No expresándose nada respecto al deseo de la Legislatura, pudiera existir alguna oportunidad para discutir el punto de si debemos o no adoptar un curso semejante. Pero a la luz del precepto contenido en el código arriba citado no puede existir cuestión alguna ya en lo que respecta al alcance o extensión del poder conferido, o en cuanto a la naturaleza del deber impuesto a las cortes de esta isla.

Aunque según el criterio que tenemos de la materia la cuestión de prescripción propiamente dicha no está necesariamente envuelta, sin embargo, como ha sugerido un distinguido abogado que estuvo presente en la segunda vista y que intervino como *amicus curiae* en la discusión, la cuestión de que una servidumbre a favor del público constituye una excepción a la regla general como ha sido invocada por el apelado no deja de estar sostenido por algunas autoridades.

''La discontinuidad de las servidumbres como consecuencia de la imposibilidad de la continuidad de los actos humanos, es racional y cierta con relación a los actos de un solo individuo o de algunos de ellos; pero no cabe el mismo principio con relación a la colectividad.

''En las servidumbres de interés privado, tanto voluntarias como legales el derecho se establece a favor de una persona determinada, si es de claridad notoria, el que esta persona no pueda ejercerla

constantemente porque hay imposibilidad física de ello.  Caso muy
distinto es el de una servidumbre establecida en favor de una cole-
tividad, es decir, para utilidad pública y comunal.  Aquí no es ya
una persona o los relacionados con ella (criados, obreros, etc.) los
que pueden usar solo de la servidumbre; son todos los que componen
la entidad colectiva (municipio y nación), y por tanto, entendemos
que el uso, si no es en efecto continuo hay al menos que presumirlo
así.  En realidad, tanto en las servidumbres de interés privado como
en las de utilidad pública y comunal, la continuidad y la disconti-
nuidad parten de una presunción que es exacta en su respectivo
caso.  En las de utilidad pública y comunal se supone el uso per-
manente y constante, en oposición a las de interés privado, en las
que el uso no puede menos de reputarse discontinuo.''  Scaevola, tomo
10, pápina 163.

"La nota característica,  *  *  *  entre las servidumbres con-
tinuas y discontinuas parece ser la de que su uso pueda o no ser in-
cesante.  No puede serlo, cuando su ejercicio consiste en un acto del
hombre, considerado éste aisladamente, sea un solo propietario, va-
rios condueños o una *comunidad* o *corporación*.  Pero las servidum-
bres establecidas en interés público, como la de salvamento, camino
de sirga, etc., no existe esa imposibilidad; su uso puede ser incesante
y la servidumbre puede estimarse continua.''

Una diferencia interesante y algo semejante es la que
existe entre las corporaciones privadas y las de servicio pú-
blico como indicó esta corte en el caso de *Torres* v. *Plazuela
Sugar Company, supra*.  Véanse también los casos de la Igle-
sia Católica.

Sin embargo, el presente caso no gira sobre la cuestión
de servidumbre por prescripción, sino que más bien depende
de la existencia o inexistencia de una supuesta concesión me-
diante expropiación voluntaria hecha por el dueño del te-
rreno para uso público.  Bouvier, Volumen 1, página 524; 18
C. J. página 38, sección 1; id. página 40, sección 3; id. pá-
gina 41, secciones 8, 9;  id. páginas 57–58; sección 41 *b*,
sección 42 *b*.

Y el principio fundamental de un impedimento (*estoppel
in pais*) es tan conocido de la ley civil como de la jurispru-
dencia de Inglaterra y de los Estados Unidos.  *Factum cui-*

*que suum, non adversario nocere debet,* (*Dig., libro L, Tit.
XVII, reg. 155.*)　O en la más amplia y general expresión
de la jurisprudencia española relativa a que "nadie puede
ir contra sus propios actos y hechos".　Scaevola Código Ci-
vil, Apéndice 2, página 27 y siguientes, y casos citados.

La mayoría de las cuestiones planteadas por el apelado
han sido consideradas en una u otra época por la Corte Su-
prema de Louisiana, donde la doctrina de dedicación fué
adoptada en fecha muy antigua y ha sido observada más o
menos uniformemente aunque no sin cierto recelo en ocasio-
nes hasta la fecha presente.

En el año 1833 el Juez Martin al formular su opinión
disidente en el caso de *De Armas* v. *Mayor, etc., of New Or-
leans,* 5 La. Rep. 132, refiriéndose al caso entonces reciente
de *Cincinnati* v. *White's Lessee,* 6 Peters 431, se expresó en
estos términos:

" * * * He examinado en vano la opinión de la corte en busca
de alguna referencia o alusión a algún principio de la ley común de
Inglaterra.　Me ha parecido que el caso fué resuelto sobre los pri-
meros amplios y generales principios de la ley mencionada en el
cuerpo del derecho civil (*corpus juris civilis*), o sea *Honest vivere*
'*vivir honradamente*'; de donde se infiere la máxima de *pelliciti ser-
vare fidem,* 'cuando hacemos una promesa debemos cumplirla'; y
el consiguiente corolario *turpe est fidum fallere*—'es vergonzoso de-
fraudar esperanzas que hemos prometido.' "

"Pero la armonía que guarda la decisión con las leyes de España
se ve por la conformidad en que está con la del más alto tribunal de
Louisiana, lo que fué declarado dos años antes de su retroceso a
Francia."

En el caso de *New Orleans* v. *United States,* 10 Peters
662, el Sr. Webster, en representación de los apelantes insis-
tió en que "la dedicación de terrenos para usos públicos cons-
tituye un obstáculo o impedimento de toda reclamación sub-
siguiente en cuanto al mismo, tanto en la ley civil como en
la ley común inglesa.　French Pandects, artículos 15, 28; 3
Mart. (La.) 296, 303-4; 11 Ibid 660."

El Sr. Livingston, también en representación de los apelantes después de hacer un estudio acabado de la opinión disidente emitida por el Juez Martin en el caso de De Armas y de la doctrina de otros antiguos casos de Louisiana y referirse a la teoría de dedicación dijo asimismo lo que sigue:

" * * * La ley por virtud de la cual la ciudad está en posesión no es la simple ley común, es la ley de la justicia eterna que informa todo sistema, común a todo país y de la cual cualquier desviación es una injusticia y una anomalía. Lo que ha sido dado no puede ser quitado sin causar perjuicio, de igual manera que no puede ser tomado lo que se adquiere de cualquier otra parte. El rey, la república o el individuo que confiere un derecho sobre una propiedad no puede quitarlo como tampoco puede incautarse de lo que nunca poseyó. La indicación en el plan significaba la misma cosa en Louisiana bajo la ley francesa que en América bajo la ley común; en ambas significa la trasmisión del derecho; en ambas ese derecho es sagrado."

Después de discutir y considerar ampliamente los derechos de las partes de acuerdo con las leyes, usos y costumbres, tanto de Francia como de España, la corte al sostener la teoría de los apelantes y resolver la proposición basada en la suposición de que como no se probó que se hubiera hecho alguna concesión del terreno en cuestión no podía presumirse ninguna, se expresó en los siguientes términos (página 721).

" * * * La doctrina de la presunción es tan reconocida por la ley civil como por la ley común. Es un principio que ningún tribunal ilustrado en la investigación de la verdad y al aplicar hechos a las cuestiones humanas puede hacer caso omiso de él."

También debemos mencionar que el lenguaje contenido en el caso de De Armas se cita con aprobación en la opinión unánime de la Corte Suprema de Louisiana en el caso de *City of Baten Rouge* v. *Berg,* 21 La. Ann. 244, más de 35 años después del comentario hecho por el Juez Martin.

Sin discutir más los casos de Louisiana se llama la atención a los siguientes: *Renthorp* v. *Bourg,* 4 Martin (O. S.) 97; *Municipality Nó. 2* v. *Orleans Cotton Press,* 18 La. 122;

*City Council of Lafayette* v. *Holland,* 18 La. 286; *Carrollton R. R. Co.* v. *Municipality No. 2,* 19 La. 62; *Linton* v. *Guillotte,* 10 Rob. 357; *New Orleans and C. R. Co.* v. *Carrollton,* 3 La. Ann. 282; *Hatch* v. *Arnault,* 3 La. Ann. 482; *Carrollton* v. *Jones,* 7 La. Ann. 233; *Municipality No. 2* v. *Palfrey,* 7 La. Ann. 497; *Shreveport* v. *Walpole,* 22 La. Ann. 526; *McNeil* v. *Howell,* 34 La. Ann. 1090; *Heirs of Leonard* v. *Baton Rouge,* 39 La. Ann. 275; *Lawson* v. *Shreveport Water Works Company,* 111 La. Rep. 74.

Admitiendo para los fines de la discusión la propiedad de la doctrina de *Farr* v. *Wheelwright, supra,* en el sentido de que ''los hechos que constituyen la dedicación en que el demandante se funda deben ser alegados,'' ese caso sin embargo puede distinguirse claramente. Quizás si sería una objeción más adecuada a la demanda presentada en este caso que el demandante no alega en términos apropiados una dedicación y aceptación como tal, sino más bien la circunstancia evidencial en vez del hecho principal. En el caso de *Farr* los demandantes alegaron—

''Que por más de treinta años inmediatamente precediendo al 1 de marzo de 1906, los demandantes, sus antecesores en interés, y el público han abiertamente, notoria y pacíficamente; y con el consentimiento del antecesor en interés del demandado, y sin objeción u obstáculo por persona alguna, con excepción del demandado, como más adelante se alega, usaron y transitaron en y por el predio de terreno descrito en el párrafo anterior, y cada y toda parte del mismo, con caballos, vehículos y a pie como materia de conveniencia y necesidad como un camino (*highway*) para el propósito de ingreso y salida a y de los terrenos respectivos de los demandantes y de sus antecesores en interés, y situados a los lados este y oeste del predio de terreno descrito en el párrafo sexto de esta demanda, y los terrenos que quedan inmediatamente al norte y contiguos a los terrenos últimamente mencionados.''

En este caso el demandante, un municipio que no es un colindante, alega la existencia de un camino público que ha sido usado no con el mero consentimiento de la apelada como

medio conveniente de entrada y salida de los terrenos en
cada lado de la finca que pertenece a la apelada sino como
un camino vecinal perteneciente a la municipalidad, que ha
sido debidamente inscrito como tal, *respetado* por los cau-
santes de la apelada y que forma el punto de enlace entre
dos caminos públicos, uno de los cuales es la carretera in-
sular.   La prueba que pueda aducirse al juicio podrá de-
mostrar que el supuesto camino no es en realidad un camino
vecinal sino una simple servidumbre de paso privado; que
los causantes de la apelada no lo respetaron ni tuvieron por
tal camino público sino que meramente toleraron de vez en
cuando o con más o menos frecuencia que algunos vecinos
cruzaran por su finca.   Pero el hecho de respetar un camino
público como tal implica algo más que una simple tolerancia
para transitar por determinado camino y a falta de cualquier
objeción que no sea la de que los hechos alegados no cons-
tituyen una causa de acción, la alegación del uso constante
del camino vecinal por parte del municipio y de que como
tal ha sido respetado por más de veinte años indica suficien-
temente la naturaleza adversa del usuario.

Sin embargo, la opinión en que se fundó el caso últimama-
mente citado no dice que el usuario contra adverso derecho,
según se ha entendido la frase en materia de modos de ad-
quirir bienes o derechos reales por prescripción, constituya
uno de los elementos de la doctrina de la consagración (*de-
dication*).   La decisión se funda en dos motivos distintos, a
saber; que ''deberán alegarse los hechos constitutivos de la
consagración o dedicación'', o que si la pretensión se funda
en la teoría del usuario contra adverso derecho para distin-
guirla de la de consagración deberá aparecer de la alegación
la adversa naturaleza del usuario.   En ese caso no hubo tal
consagración porque de la demanda claramente aparecía no
existir de por medio ningún interés público.   Y el mero hecho
de que por más de treinta años los demandantes que eran unos
colindantes hubieran estado usufructuando con el consenti-

miento del demandado sus tierras como un medio conveniente de entrada y salida por los terrenos del demandante no creó servidumbre alguna sobre los terrenos del demandado, porque los demandantes por virtud de sus propias afirmaciones no eran más que meros arrimados (*licensees*).

"La consagración (*dedication*) y la prescripción se diferencian la una de la otra en que la consagración se establece mediante prueba de un acto de consagración y la intención de abandonar el terreno sin referirse al período de tiempo que haya estado al uso del público, mientras que el uso por un largo período de tiempo es uno de los elementos determinativos de la prescripción. Así también la prescripción la constituye la tenencia adversa so color de derecho (con justo título), mientras que la consagración, ora sea expresa, ora implícita, descansa en el consentimiento del dueño. Aun más la doctrina de la prescripción, según se ha dicho, no es de estricta aplicación a las servidumbres públicas. Sin embargo, la consagración o abandono al público puede inferirse de los hechos y circunstancias, y así como la doctrina de la consagración o abandono al público surgió de la base del orden público, así la doctrina de las servidumbres públicas por presunto abandono al público tiene un fundamento legítimo y ha sido generalmente reconocida, aunque sobre esta cuestión existe un conflicto de opiniones." 18 C. J. p. 40, (sec. 3), 3.

"El derecho o título ganado por consagración arranca del consentimiento del dueño, ora efectivo (*actual*), ora implícito, mientras que el derecho o título ganado por adversa posesión nace por la afirmación de título en pugna con el del dueño del terreno según el registro." Id. p. 41, (sec. 8.) 8.

'En aquellos casos en que el terreno ha estado continuamente al uso del público con la aquiescencia del dueño por un período de tiempo de tal duración que los derechos privados y la conveniencia y comodidad del público habrían de ser materialmente afectados por la interrupción de su goce y disfrute, habrá de presumirse la consagración y abandono al público, y la doctrina de *equitable estoppel* es aplicable con especialidad a casos de esta índole. Bajo estas circunstancias no es necesario determinado transcurso de tiempo en el uso del terreno para constituir válida consagración. No es necesario que el uso haya sido por el término de años que se requiere para que la concesión se presuma; puede serlo por un término menor, si el lapso de tiempo es de tal naturaleza que la comodidad del público y los

derechos de los particulares pudieran ser materialmente afectados por la interrupción del goce y disfrute de la servidumbre. Y el tiempo durante el cual se haya estado en el goce y disfrute del camino es un hecho que puede tener en cuenta el jurado como tendente a probar la real y efectiva consagración y abandono al público y su aceptación por parte de éste." Id. p. 104, (sec. 119), &

En algunos casos se ha declarado que el uso del terreno por parte del público por el período prescriptivo de veinte años crea la presunción de la consagración. 18 C. J. página 101. En otros casos se adopta un período "igual al que se halla prescrito por los estatutos de prescripción como impedimento para las acciones encaminadas a la devolución de terreno." Id. página 102. Las mismas cortes que han adoptado de este modo períodos fijos por vía de analogía con los exigidos para justificar el dominio o título por prescripción, o para constituir óbice o excepción a las acciones reales, parecen sostener que "el uso deberá ser adverso, esto es, bajo un pretenso derecho exclusivo con conocimiento y aquiescencia del dueño, continuo y sin interrupción alguna. Id. página 100, sección 105, 5.

Nos inclinamos a admitir que si la razón *decidendi* de estos casos puede reconciliarse en forma alguna ya con la letra o con el espíritu del Código Civil en materia de servidumbres y prescripción, entonces no menos de treinta años debería requerirse en acciones fundadas sóla y exclusivamente en el uso contra adverso derecho.

Si comparamos superficialmente las citas que se hacen bajo la proposición de que el uso deberá ser adverso con aquéllas en apoyo de la teoría de un *estoppel in pais* podría sugerirse una diferencia radical de criterio y una agrupación geográfica de casos más bien que la fina distinción uniformemente establecida en todas las jurisdicciones entre una clase de casos y la otra, con arreglo a los hechos envueltos. No necesitamos decidir por ahora ni la existencia de semejante

conflicto posible, ni tratar de averiguar cómo puede el mismo deberse a una confusión de la verdadera teoría de la consagración o dedicación con la de la prescripción adquisitiva del dominio (*prescription through adverse possession*).

En el presente caso el demandante no se funda en ningún período de tiempo fijado por el estatuto, ora para la adquisición de derechos reales o como óbice para una acción sobre devolución de bienes, a menos que se considere la demanda como si alegara el uso por tiempo inmemorial, en cuyo caso aduciría una causa de acción independientemente de toda cuestión referente a consagración o dedicación. Y la afirmación respecto de la intervención del legítimo uso de otras fincas del vecindario y de la comunidad en general en el goce de la vida y de sus bienes suple el elemento de los derechos privados, conveniencia pública, y cómodo goce, si se exigiera su especial mención para diferenciar el presente caso de aquellos en que se ha declarado indispensable la adversa posesión por el tiempo necesario para ganar la prescripción.

Como ya hemos indicado, en nuestra anterior opinión la demanda no es en manera alguna un modelo de alegación. La única cuestión ante nosotros es la de si los hechos alegados examinados desde cualquier punto de vista constituyen o no una causa de acción, y no deberá entenderse que este tribunal resuelve otra cosa fuera de ésta. Puede ser que de no probarse entera y completamente todos los hechos alegados haya motivo justificado para una moción de sobreseimiento. Quizás una simple explicación por parte del demandado de esos hechos, una vez que hayan sido establecidos por el demandante, sería suficiente para presentar la cuestión en una forma enteramente distinta tornando así la balanza en contra del caso que *prima facie* haya podido establecer el demandante. Por vulnerable y susceptible de impugnación que por otros fundamentos pudiera ser la demanda y con respecto a este particular no queremos emitir opinión

alguna, no podemos decir que los hechos expuestos y alegados en ella no constituyan una causa de acción.

Es de revocarse la sentencia apelada.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Sr. del Toro.

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.

El Juez Asociado Sr. Hutchison emitió también la opinión del tribunal en abril 22, 1918.

En aquella sentencia concurrieron los Jueces Asociados Sres. Wolf y del Toro; el Juez Presidente Sr. Hernández firmó "conforme con la sentencia". El Juez Asociado Sr. Aldrey no intervino en la resolución del caso.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF.

Estoy conforme con la opinión de la mayoría del tribunal respecto a que la dedicación puede surgir en Puerto Rico en igual forma que en los Estados Unidos. En verdad estoy de acuerdo con todo aquello que en la opinión tiende a sostener la doctrina de dedicación especialmente en tanto en cuanto dicha doctrina se funda en una especie de impedimento (*estoppel*). Pero ya que se suponga o no que la dedicación surge de una concesión, impedimento, o de cualquier otra teoría, en la demanda deben expresarse los hechos que muestren la existencia de tal dedicación. Encuentro que la demanda es defectuosa en este sentido. A mi modo de ver no existe nada en dicha demanda que muestre ya una concesión o un impedimento. La alegación de que el camino es uno vecinal establece una conclusión; en otras palabras, que ha surgido la dedicación. ¿Por qué es un camino vecinal? A mi juicio no lo expresa la demanda. Se admite en ella que el camino atraviesa la finca de la demandada e implícitamente también admite que el título de propiedad o de dominio lo tenía la demandada o los anteriores

dueños.   La alegación que más se asemeja a la de una con-
cesión o impedimento es la de que los causantes de la de-
mandada habían respetado el camino vecinal.   "Respetado"
no es incompatible con "consentido", pero puede significar
muchísimo menos.   No se inserta en la demanda ningún he-
cho que convierta lo que puede ser un mero acto de tole-
rancia en un impedimento o una concesión.   El caso de
*Torres* v. *Plazuela Sugar Company,* citado en la opinion de la
mayoría de la corte, muestra, citando las palabras del có-
digo, que los actos de mera tolerancia no confieren título
alguno, y los hechos probados por Plazuela Sugar Company
probablemente fueron tan fuertes para establecer un impe-
dimento como los de este caso.

Pero considerada en conjunto la demanda resulta evi-
dente que el demandante se fundaba en un derecho de pres-
cripción y no en nada semejante a una dedicación.   Se alega
un período de prescripción de veinte años y mi opinión es
que el actor no intentó otra cosa.   Si bien las alegaciones
deben ser interpretadas liberalmente no deberá darse a las
palabras mayor alcance para conferir a un demandante un
derecho para el cual faltan los hechos fundamentales.

Además, me parece que en el caso de *Farr* v. *Wheelright,*
153 Pac. 256–57, los hechos a favor de la dedicación eran
aún más fuertes que los de este caso.   En aquel caso se
alegó el consentimiento y la dedicación era la base de la
acción.

Si el demandante hubiera alegado que la demandada ha-
bía estado conforme en hacer las reparaciones públicas en
el camino o que había solicitado protección en cuanto al
mismo, o algún otro hecho semejante, podría haber surgido
algún impedimento, pero no existe nada de esto en la
demanda.