NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND CITY OF PATERSON, RESPONDENTS.

Submitted March 22, 1917—Decided June 6, 1917.

1. A declaration, by the husband of the then owner of land, that if he opened streets through it the opening would conform to a certain map, lacks the essentials of a legal dedication—*first*, because it is not made by the owner of the *locus*, and *secondly*, because at most it is but a promise or agreement to dedicate *in futuro*.

2. The declared object of the Fielder Grade Crossing act (*Pamph. L.* 1913, *p.* 91) is to protect the public from danger incident to grade crossings. Consequently, where it appears that the danger incident to a proposed grade crossing can be obviated by a slight change in the line of streets, which can be made to practically serve the public use and convenience, the adoption of such a plan would seem to present a satisfactory substitute, and the permission granted by the Public Utility Commission for the construction of such grade crossing should be vacated.

On *certiorari* removing order of Public Utility Commissioners relative to grade crossing at Seventeenth avenue and Twenty-fourth street, Paterson.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *Collins & Corbin*.

For the commissioners, *L. Edward Herrmann*.

For the city of Paterson, *Randall B. Lewis*.

The opinion of the court was delivered by

MINTURN, J.    The *certiorari* in this case removes an order made by the Board of Public Utility Commissioners, granting permission to the city of Paterson to construct a crossing at grade, over the railroad right of way at Seventeenth avenue

and Twenty-fourth street, where the two streets come together. A crossing is arranged for Seventeenth avenue, but none is arranged for East Twenty-fourth street, and the proposal is to compel such construction by the railroad. The railroad contests the right of the city to require it on the ground that the street is not in fact a public highway. It was never laid out as such, and the city relies upon a map made in 1868 to evidence the dedication. We think the map does not show a dedication of the *locus in quo.* It contains a declaration by the husband of the then owner that if he ever opened the streets, the opening would conform to the map. This lacks the essentials of a legal dedication—*first,* because it is not made by the owner of the *locus;* and *secondly,* because at most it is but a promise or agreement to dedicate *in futuro.*

The buildings along the lines of the street, as actually used, and the actual practical use of the street as a dirt or cinder road, seem to be shown, and that fact would justify an inference that continued use has accorded to it the status of a public highway. That question, however, is not before us for decision, nor was it a subject for the determination of the Public Utility Commissioners, under the legislation prescribing their powers.

The fact is quite apparent that in opening up these two streets, as proposed, so that the railroad may cross them diagonally, a crossing involving serious danger to the public will be thereby created.

The commissioners seem to have dealt with the situation as though it presented a question of the construction of appurtenances to the railroad. The declared object of the statute is to protect the public from the danger incident to grade crossings, and the inquiry before the commissioners was whether such a crossing as that in question would result in increasing the danger and hazards of the public in the use of it; and if it would increase the public dangers, then whether in view of the situation thus presented, it was still necessary and desirable as a public crossing. For manifestly a public crossing at grade might be highly desirable as a pub-

lic convenience, but if its existence and continued use might serve in actual practice as a standing menace to the lives of the community, it would not comport with a proper exercise of wisdom, nor accord with the declared legislative policy and intent to authorize or compel such construction.

These important considerations seem not to have been dis- cussed or determined by the board, and as we have intimated, they present the distinctive and vital inquiry in the case. We think it was made quite clear by the railroad, that the difficulty presented here could be obviated by a slight change in the lines of the streets at the corner where Seventeenth avenue and Twenty-fourth street intersect, and if such a change in existing conditions can be made to practically serve the public use and convenience, the adoption of such a plan would seem to present a satisfactory substitute, and a reasonable solution of the situation rather than a proposed construction which is menaced with the very difficulties and dangers which it is the avowed purpose of this legislation to eliminate.

We think the testimony before the board was not sufficient nor of a character to warrant or reasonably support the con- clusion reached by the board, and for that reason we have concluded that the permission granted should be vacated. *Erie Railroad Co.* v. *Board of Utility Commissioners,* 89 *N. J. L.* 57; *Potter* v. *Board of Public Utility Commissioners, Id.* 157.