## MUNOZ et al. v. PORTO RICO RY., LIGHT & POWER CO.
### No. 2847.

Circuit Court of Appeals, First Circuit.

Dec. 19, 1934.

William C. Rigby, of Washington, D. C. (Fred W. Llewellyn and Arthur W. Brown, both of Washington, D. C., and Benjamin J. Horton, Atty. Gen., of Puerto Rico, on the brief), for appellants.

Henri Brown, of San Juan, Puerto Rico, for appellee.

Before BINGHAM and WILSON, Circuit Judges, and LETTS, District Judge.

WILSON, Circuit Judge.

The decree here appealed from was entered in a suit in equity filed in the federal District Court of Puerto Rico by the Porto Rico Railway, Light & Power Company, hereinafter referred to as the railway, to enjoin the enforcement of an order made by the Public Service Commission of Puerto Rico, hereinafter referred to as the commission, by which the railway was required, within sixty days from the date of ratification of the commission's order, to fill in the space between the rails of its tracks on Egozcue or Park street, so called, in the barrio of Santurce, in the municipality of San Juan, to the same level as the adjoining land used as a public thoroughfare outside of the rails, and to roll or surface the material within the rails so that pedestrians and vehicles can use the same without inconvenience or danger.

The railway owns and operates an electric street railroad in the municipalities of San Juan and Rio Piedras under a franchise

duly granted to its predecessor in title, the assignment of which railroad and franchise to the railway was authorized by the duly constituted authorities of Puerto Rico.

A part of the tracks of the railway is laid in the public streets of San Juan, but the greater part of its tracks is located on a private right of way belonging to the railway along the principal highway between San Juan and Rio Piedras, the Carratera Central, and designated as Ponce de Leon avenue.

From a point on Ponce de Leon avenue opposite what is known as Thirteenth street, the railway's predecessor in title obtained the right to lay its tracks a short distance over certain private lands on what is now known as Park street, and from what is now designated as San Mateo street purchased several contiguous tracts of land forming a strip approximately nine meters wide extending northerly approximately one-half mile in length to an open space fronting on the sea and known as Borinquen Park, on which it constructed a spur track on the land so acquired, and over a private right of way between San Mateo street and Park street to its main line on Ponce de Leon avenue. The deeds of the land purchased were properly inscribed in the registry of property, and the railway and its predecessors in title have paid the taxes assessed thereon by the municipality of San Juan up to the beginning of these proceedings.

A single track was built on the easterly side of the strip of land purchased, the rails being what is known as the T-rail type, which are usually used in track construction over private rights of way, and project about six inches above the ties. The space within the rails has never been filled except at certain points by private parties, or by the municipality at the end of certain streets on the east, and with the consent of the railway, as will hereafter appear.

When the tracks were originally laid along this strip, there were no dwelling houses on either side; but, since the construction of its tracks from Ponce de Leon avenue to Borinquen Park, dwelling houses have been built on both sides practically the entire length of this strip of land between Ponce de Leon avenue and the park. As a result, the part of the strip to the west of the railway's tracks has been used by the public without objection by the railway as a means of access to the houses situated on the adjoining land, both on foot and by vehicles, though traffic by teams and automobiles has in recent years, as we understand the evidence, been restricted to one direction, viz., from north to south, or from the park to Ponce de Leon avenue.

When the tracks were originally laid, the entire surface of the strip of land was sandy and ill suited for travel, either on foot or by vehicle; but as houses were built, it became more and more a means of travel between Ponce de Leon avenue and the park, and of access to the houses on the lands adjoining. Some time prior to 1915, there arose a popular demand for an improved condition of the part of the land of the railway on the westerly side of its tracks used by the public as a thoroughfare, and the municipality, with the consent of the railway, prepared it for travel by macadamizing it outside the westerly rail; but nothing has ever been done to prepare the space between the rails for use as a thoroughfare. The owners of houses on the east side of the rails have from time to time, with the consent of the railway and at their own expense, filled in between the rails in front of their own property, to provide access on foot and by automobiles to the prepared part of the way from their residences, and at several points where streets have been laid out by the municipality up to the railway's land on the east, a crossing to the part prepared for travel on the west side has been filled in between the rails, but always with the consent of the railway.

The railway's title to the entire strip of land has never been questioned by the municipality of San Juan. These proceedings arose from an adjoining owner and resident on the east side, in order that he might have more convenient access to his property, petitioning the commission to order the railway to pave between its rails, upon which petition the commission issued an order to show cause, which was duly served on the railway.

The railway appeared before the commission and filed an answer setting forth that the space occupied by its tracks was its exclusive property; that it maintained it in its present form to prevent its use by vehicles, and denied the jurisdiction of the commission to require it to pave or prepare it for public travel.

Having denied the jurisdiction of the commission to act in the premises, the attorney for the railway withdrew from the hearing. The commission, however, proceeded with the hearing, and received testimony as to the use of the land by the public as a thoroughfare

for the purpose of proving dedication as a public street; and finding that dedication was proven, it held that there existed a public street in which the railway's tracks were located; and further finding that its tracks constituted one of the facilities of the railway, and that the condition of its track bed hindered and made dangerous public traffic, it issued an order requiring the railway to prepare the space between its rails so as to be suitable for public traffic.

We think it may be fairly stated that the commission's order is based upon the following conclusions of fact and law:

(1) That the entire strip of land, including that upon which the railway's tracks are laid, between Ponce de Leon avenue and Borinquen Park, has been dedicated as a public street.

(2) That where an electric railroad's tracks are located upon a public street, the Public Service Commission has jurisdiction to order that it be paved between the rails at the railway's expense, and to direct how such paving should be done.

(3) That even where a railroad track is laid upon private property belonging to a utility, if adjoining a public thoroughfare, the commission has jurisdiction to order that the space upon which the track rests be paved and made available for traffic as a public street, at the expense of the utility, on the ground that such construction between the rails is the repair of a facility of an electric railway or the furnishing of a new facility, and is reasonably necessary for the accommodation or safety of its patrons, employees, and the public.

On April 8, 1932, the commission filed a motion to dismiss the bill on the following grounds: (1) That it is not a controversy between citizens or subjects of a foreign state or states, or citizens of states, territories, or districts, not domiciled in Puerto Rico; (2) that it does not involve an interpretation of the Constitution of the United States or any law enacted by the Congress of the United States; (3) that it does not appear that the complainant ever applied for the remedies afforded by the statutes of Puerto Rico by way of appeal from the order of the commission to the Insular District Court; that by its permitting the use of its land as a public thoroughfare, it had relinquished its right to the public and was estopped; (4) that the commission had exclusive jurisdiction over all the matters here involved under the laws of Puerto Rico.

The commission, in the federal court on May 7, 1932, answered the railway's bill admitting the railway's ownership of the railway properties, and, as a defense, set up that the property described in the complainant's bill was a public street and for thirty years had been used freely, continuously, and without interruption as a public thoroughfare for pedestrians and vehicular traffic, and that the complainant is a public service company, and, as such, is bound to furnish its service to the public in accordance with the terms of its franchise and such necessary regulations as to safety of its service and facilities as the commission in its discretion may deem it just and proper to prescribe.

Later, on December 14, 1932, the commission filed a second motion to dismiss the complainant's bill based on the grounds that the railway having failed to avail itself of the administrative procedure afforded by the statutes of Puerto Rico, it had not exhausted its remedies provided by the insular laws.

The federal District Judge denied the motion of April 8 and issued a temporary injunction. He also refused to grant the motion to dismiss filed December 14, 1932, and entered a final decree granting a permanent injunction against the enforcement of the order of the commission.

The assignments of error raise the following issues: (1) That the controversy did not involve an interpretation of the Constitution of the United States or any law enacted by Congress; (2) that the federal court was without jurisdiction by reason of the railway's failure to avail itself of the remedies afforded by the statutes of Puerto Rico; (3) whether the land occupied by the railway's tracks had ever been dedicated for public use as a public thoroughfare; and, if not, (4) whether the commission has the authority to compel the railway at its own cost to prepare its land for public use.

The only issues raised by the assignments of error, bearing on the jurisdiction of the District Court that are argued in the brief of the commission, are: (1) That the complainant had a plain, speedy, and adequate remedy at law, and (2) since the existence of the alleged legal right which the injunction is sought to protect was in dispute, it must first be established in a court of law.

■ The contention of the commission that the federal District Court was without jurisdiction is without merit. Whether the proceedings by appeal from the commission's order to the Insular District Court and thence

820

to the Supreme Court of Puerto Rico, and finally to this court, and even to the Supreme Court of the United States, can be said to be adequate and speedy is immaterial. When the legislative or administrative proceedings of the Public Utilities Commission are ended by an order of the commission, and a judicial question arises, a public utility is not obliged thereafter to pursue its remedy to protect its rights in the state or the insular courts, but may at once, if a federal question is presented, apply to a federal court for relief.

■■ This question has been so frequently decided by the Supreme Court as no longer to leave any room for doubt. Smyth v. Ames, 169 U. S. 466, 516, 517, 18 S. Ct. 418, 42 L. Ed. 819; Bacon v. Rutland R. R. Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538; Pacific Tel. & Tel. Company v. Kuykendall, as Director of Public Works of Washington, et al., 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975; United States v. Abilene & So. Ry. Co., 265 U. S. 274, 282, 44 S. Ct. 565, 68 L. Ed. 1016; Prendergast et al. v. New York Tel. Co., 262 U. S. 43, 48, 49, 43 S. Ct. 466, 67 L. Ed. 853; Railroad & Warehouse Commission v. Duluth St. Ry., 273 U. S. 625, 47 S. Ct. 489, 71 L. Ed. 807; State Corporation Commission v. Wichita Gas Co., 290 U. S. 561, 569, 54 S. Ct. 321, 325, 78 L. Ed. 500, in which case the court said: "The appellees were not obliged preliminarily to institute any action or proceeding in the Kansas court in order to obtain in a federal court relief from an order of the commission on the ground that it is repugnant to the 'Federal Constitution." Citing Bacon v. Rutland R. R. Co., supra. No legislative powers were conferred on the insular courts of Puerto Rico on appeals from orders of the commission of Puerto Rico by section 85 of the act creating the commission (No. 70 of the Laws of Puerto Rico approved December 6, 1917), as clearly appears from the interpretation of a like provision by the federal Supreme Court in Pacific Tel. & Tel. Co. v. Kuykendall, as Director of Public Works of Washington, et al., 265 U. S. 196, 44 S. Ct. 553, 68 L. Ed. 975. The case of Prentis v. Atlantic Coast Line Company, 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150, does not apply here, since under the statutes of the state of Virginia its courts, on appeal from its state corporation commission, were given legislative powers to fix rates, and not until the body having the authority to finally fix a rate has acted, does a judicial question arise, as was pointed out in Bacon v. Rutland R. R. Co., supra, at page 137 of

232 U. S., 34 S. Ct. 283, 284, 58 L. Ed. 538.

■■ There is likewise no merit in the contention that it was necessary for the railway to establish first its title to the land on which its tracks were laid in an action at law. It was in possession and had been for over thirty years. It proved its title thereto by duly recorded deeds. The mere denial of the right of the person in possession under a deed is not sufficient to require such party to establish his rights at law before an equity court will interfere to protect him against repeated trespasses or serious injury. Pomeroy's Equity Jurisprudence (2d Ed.) § 1932; Williams v. Atlantic Coast Line R. Co. (C. C. A.) 17 F.(2d) 17; People of Porto Rico v. Livingston (C. C. A.) 47 F.(2d) 712, 719; Lawson v. United States Mining Co., 207 U. S. 1, 28 S. Ct. 15, 52 L. Ed. 65.

■ There was no evidence from which it could properly be found that the land on which the tracks of the railway were laid had ever been dedicated by the railway to the public as a public street or way. On the contrary, the evidence before the District Court was all to the contrary. Dedication to public use takes place only by consent of the donor. It is the converse of acquiring title by adverse use. We do not need to determine whether there has ever been a constructive dedication of that part of the land of the railway used by the public as a thoroughfare; but certainly the District Court was warranted in finding that there never had been a dedication as a public street by the railway of the land on which its tracks were laid and so much land as is necessary to the use of them in the operation of its railway. To determine the title to land involves judicial powers which the commission does not possess, and much less has it the power to condemn land.

The condition of the land on which the tracks were laid, the kind of rails used, but more particularly the fact that the abutting owners on that side have, in case they desired to prepare the land occupied by the tracks for easier ingress and egress to and from their land, always first obtained the consent of the railway, and any work of this nature has been done at the expense of the abutter. It also appears that the surfacing of the rest of the land of the railway and preparing it for public travel and whatever repairing has been done, has been done with the consent of the railway and at the expense of the municipality. It does not appear that

anything has been done by the municipality on any part of this land, except with the consent of the railway and at the expense of the municipality.

In Irwin v. Dixion, 9 How. 10, 30, 13 L. Ed. 25, the Supreme Court said: "The idea of a dedication to the public of a use of land for a public road must rest on the clear assent of the owner, in some way, to such dedication."

Also see Boston & Maine R. R. v. Daniel (C. C. A.) 290 F. 916, 919; Littlefield v. Hubbard, 124 Me. 299, 302, 303, 128 A. 285, 38 A. L. R. 1306; 8 R. C. L. 889, 892.

■ The commission as a last resort relied on certain sections of the Public Service Act, particularly sections 2, 3 (a, c), 24, 25, and 35. The first two sections require every public utility to furnish and maintain such service, including facilities, in a manner as shall in all respects be reasonably safe and adequate for the accommodation and safety of its patrons. Sections 14 and 24 authorize the commission to inquire into, hear, and regulate the service; and sections 25 and 35 authorize the commission to require public service companies to make all necessary repairs, alterations, and improvements in and about their facilities and service as may be reasonably necessary and proper for the safety, accommodation, convenience, and service of their patrons, employees, and the public.

The commission bases its authority to compel the railway to pave or macadamize the land between the tracks, even assuming they are laid on its own land, on the meaning of the word "facilities," and the provisions of the above sections under which it is empowered to require a public utility to repair, alter, and improve its facilities as far as may be reasonably necessary for the safety, accommodation, convenience, and service of its patrons, employees, and the public.

The term "facility," as used in the Public Service Act of Puerto Rico, includes "all the plant and equipment of a public service company and any and all other means and instrumentalities in any manner owned or used, managed or furnished in connection with the business of any public service company."

Undoubtedly the facilities of the railway include its tracks and land reasonably necessary for the operation of its railroad and for the accommodation of its patrons; but there is no evidence that the tracks of the railway are not reasonably safe and convenient for the accommodation of its patrons and employees.

Where tracks of an electric railroad are laid in a public street, the police powers vested in a municipality or Public Service Commission may authorize it to compel the utility to pave between its rails and a reasonable distance outside; but a different situation arises where the tracks of the railroad are laid on its private property on which the public has no right to enter.

■ There was no inherent danger to the public, using the land westerly of the railway's tracks, from the condition in which its tracks were maintained, and it does not appear that any accident has ever happened in connection therewith, except in one instance where, according to the testimony before the commission, one of the railway's cars was deliberately driven into an automobile parked between its rails. The provisions of the Public Service Act of Puerto Rico above referred to, providing that the facilities of all public utilities shall be kept reasonably safe for its patrons, employees, and the public, cannot be construed to mean that the entire plant of a utility must be maintained so as to be safe for the public to enter upon its private property in invitum. The District Court found that the railway by the construction of its tracks on Park street, and by its repeated refusal to permit alterations to be made in its roadbed, except with its consent, had given notice to the public that they were not invited to use it as a means of travel.

The order of the commission was clearly based on the theory that the land on which the railway's tracks were laid had been dedicated by the railway for public use as a street. This, as the District Court found, is not so. To require the railway, under these circumstances, to prepare its private property between its rails for use by the public as a street is beyond any powers vested in the commission, and would, therefore, amount to the taking of private property without compensation.

The District Court had a right to exercise its independent judgment on such facts as were presented before it. Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 289, 40 S. Ct. 527, 64 L. Ed. 908; Bluefield Water Works & Imp. Co. v. Public Service Commission, 262 U. S. 679, 689, 43 S. Ct. 675, 67 L. Ed. 1176.

Upon the evidence before the District Court, it is clear, we think, that the commission exceeded its authority, not only in hold-

ing that the land of the railway had been dedicated as a public street [Sag Harbor v. Long Island R. Co., P. U. R. 1917A, 181; Antisdel v. Macatawa Resort Co., P. U. R. 1925E, 614; New York, etc., R. Co. v. Board of Public Utility Com'rs, 90 N. J. Law, 432, 101 A. 49, affirmed in 91 N. J. Law, 701, 103 A. 1053], but also in holding, because vehicular traffic using that part of the railway's land which had been prepared by the municipality for public travel in order to pass one another, may be sometimes obliged to enter upon the railway's private land between its tracks, that the railway must also prepare that part of its property for public use, so that the public in thus entering on its private property will not be subject to inconvenience and a possible danger of collision with its cars [Backus-Brooks Co. v. Northern Pacific Ry. Co. (C. C. A.) 21 F.(2d) 4; Siler v. Louisville & Nashville R. R. Co., 213 U. S. 175, 29 S. Ct. 451, 53 L. Ed. 753].

The decree of the District Court is affirmed with costs.