This is a suit for the return of the purchase price of four lots of ground. Plaintiff maintains that no marketable title was, or could be, conveyed to the said property for the reason that the ground within the boundaries of the said four lots had previously been dedicated to public use by the ancestor in title of the defendants.
Defendants resist the demand for the return of the purchase price of the property, contending that it had not been dedicated to public use and that they conveyed a good and marketable title to plaintiff.
There was judgment declaring "the title purported to be conveyed to petitioner to be null and void and condemning defendants to return to petitioner his purchase money". Defendants have appealed.
The facts are not in dispute and are set forth in an agreed stipulation, only parts of which need be set forth here.
"* * * On October 28th, 1940, Mrs. Bessie M. Palmer, widow of James Amedee Gaudet, Mrs. Elizabeth M. Gaudet, *Page 784 
wife of Robert P. Lockett, John Valery Gaudet, Paul A. Gaudet, James Amedee Gaudet, Jr., and Miss Ophelia Claire Gaudet, all of age, sold the following described property to Ralph Esposito, by act of sale passed before Bernard Titche, Jr., Notary Public, registered in Jefferson Parish in Conveyance Office Book 164, folio 698, for the consideration of $650.00 cash, which was paid to the vendors, to-wit:
"`Four certain lots of ground, together with all the improvements, buildings, advantages and appurtenances thereunto belonging or in any wise appertaining, situated in the Parish of Jefferson in the subdivision known as Ingleside Heights, designated as Lots Nos. 25, 26, 64 and 65 in Square No. 5 of said subdivision bounded by Focis, Rose, Aris and Canal Streets, and according to plan of Alfred E. Bonnabel, Parish Surveyor, dated November 15, 1921, lots Nos. 25 and 26 measure twenty-five feet (25') each front on Focis Street by a depth of One hundred twenty feet (120'), and Lots Nos. 64 and 65 measure each twenty-five feet (25') front on Aris Street by a depth of One hundred twenty (120') feet.'
* * * * * *
"* * * the sale was made with all legal warranties and with full guarantee against all troubles, debts, claims, mortgages, privileges, liens, taxes, donations, alienations, evictions, and encumbrances whatsoever and with full substitution in and to all the actions which might have been enjoyed by the vendors.
* * * * * *
"* * * defendants' author in title, the late James A. Gaudet, created the subdivision known as `Ingleside Heights', and caused the Alfred E. Bonnabel plan to be made, which was intended to and did show the lots created in said subdivision, and by which plan practically all of the lots in said subdivision were sold. Defendants sold to plaintiff by reference to said plan of Bonnabel. The Bonnabel plan was never recorded in the office of the Clerk of Court and Ex-Officio Registrar of Conveyances in Jefferson Parish as required by law, particularly Act No. 134 of 1896."
Long prior to the sale to petitioner, in fact on May 24, 1926, defendants' said author in title, James A. Gaudet, had sold to Provident Building Loan Association ten lots of ground, etc., which were in fact a part of the same property but which were sold in accordance with a plan of survey made by R.P. Rordam, C.E., dated April 22, 1926. This Rordam plan, a copy of which was attached to the act of sale to Provident Building Loan Association, showed a "proposed street" running from Aris Street to Focis Street. The ground occupied by this proposed street as shown on the Rordam plan is the identical ground occupied by the four lots sold to plaintiff.
The Rordam plan referred to in the sale to the Provident Building Loan Association though annexed to the act of sale, was never placed of record in Jefferson Parish in accordance with the provisions of Act 134 of 1896, already referred to. The "proposed street" shown on the Rordam plan has never been opened and no demand for its opening has ever been made and, in fact, it is now surrounded by a fence.
The agreed statement of facts also shows: "That James Amedee Gaudet departed this life on September 3, 1939, and that his Succession was opened and bears the Number 232,220 of the docket of the Civil District Court for the Parish of Orleans, and that according to the judgment rendered in said proceedings on August 27, 1940, Mrs. James A. Gaudet was granted the usufruct of the property herein involved and your other named defendants were sent into possession of the naked ownership thereof in equal proportions subject to the usufruct in favor of their Mother."
To restate the situation briefly, Gaudet, in 1926, sold ten lots of ground to Provident Building Loan Association. Most, or all, of those lots have been sold to private owners. Those lots form one solid block, one side of which adjoins the area marked "proposed street" on the Rordam plan. This proposed street has never been opened and is surrounded by a fence and is used by one of the adjacent owners. The Rordam plan was never placed of record. Later, the area marked as a proposed street on the Rordam plan was sold by defendants to the present plaintiff.
Plaintiff maintains that in selling to the Provident Building Loan Association lots in that subdivision according to the plan which shows the proposed street, Gaudet legally dedicated the said ground to public use and thereby made it impossible for him, or his heirs, to sell the same property to any private owner. *Page 785 
It is conceded, as indeed it must be, that it is well settled in Louisiana and elsewhere that if an owner causes a plot or plan of subdivision to be made and shows on that plan streets, alleys or other portions as set aside for the use of the public and then makes sales according to that plan, there results a dedication to public use of those designated portions, whether they be actually publicly used or not.
In 12 Tulane Law Review, at page 238, it is said: "* * * the mere sale of lots with reference to a plot with streets and roadways constitutes a dedication, and formal acceptance by the public is not required * * *".
In Leland University v. City of New Orleans, 47 La.Ann. 100, 16 So. 653, 655, our Supreme Court quoted with approval the following from Dillon on Municipal Corporations: "* * * While a mere survey of land by the owner into lots, defining streets, squares, etc., will not, without a sale, amount to a dedication, yet a sale of lots with reference to such a plat, when bounded by streets, will amount to an immediate and irrevocable dedication of the latter, binding on both the vendor and vendee."
In 26 Corpus Juris Secundum, Dedication, § 23, page 78, the rule is stated as follows: "Where an owner makes a sale of land with reference to a map or plat, in the absence of a manifestation of a contrary intention, he thereby manifests an intention to dedicate the streets and alleys shown thereon to the public use."
In American Jurisprudence Vol. 16, Page 367, Section 23, appears the following: "The doctrine of dedication by plat is frequently connected with the sale of lots shown on the plat. The owner of a tract of land is held to dedicate such portions thereof as are designated for public use on the plat with reference to which he sells lots out of the tract. The sale of even one lot under these circumstances amounts to a dedication. * * *".
See, also, Iseringhausen v. Larcade et al., 147 La. 515, 85 So. 224, and Faunce v. City of New Orleans, La.App., 148 So. 57.
Counsel for defendants concede that if the Rordam plan had shown the street by name without the word "proposed", a dedication would have resulted since sales were made according to that plan but they insist that no dedication results here because the word "proposed" indicated that there was no actual street and that there would be one only if the owners should, in fact, carry out the proposal or suggestion and later actually devote to public use the land within the boundaries of the proposed street.
We find ourselves unable to grasp the distinction. It seems clear that the purpose in showing the proposed street on the plan was to induce persons who might manifest interest to believe that the lots would be made more accessible or convenient by a street which, though not yet actually opened to public use, would soon be so opened or, at least, would be so opened as soon as necessity would demand.
That a dedication may result, even though it is contemplated that the property dedicated to public use may not be so used until sometime in the future, is recognized by Mr. Elliott in his work on Roads and Streets, Vol. 1, 4th Ed., page 151, Section 129; "An owner who makes a plat on which spaces are left indicating the dedication of roads or streets, and sells lots with reference to the plat, cannot recall his dedication, for he leaves the streets to be opened by the proper local authorities at such a time as the public interest may require, and of those local authorities are the judges. * * *"
As a matter of fact, the designation of the space as "proposed street" is the only one which truthfully could be made use of. It is the only correct way to designate a piece of land which is not yet in public use but which has been set aside for a street.
While there is not the slightest suggestion of bad faith in the case at bar, to adopt any other conclusion would, we think, invite the possibility that an owner might make a plan of his subdivision showing proposed streets, proposed parks, etc., and sell to private owners the land indicated as devoted to public use and then prepare another plan, showing no property devoted to public use and sell to private owners the property shown on the former plan as being reserved for proposed streets, etc.
Counsel for defendants rely, with much confidence, upon the decision of our Supreme Court in Linton v. Guillotte, 10 Rob. 357. Unless carefully analyzed, that case would seem to be authority for the contention of defendants. There an owner of property caused a plat to be made and, on that plat, showed "La rue des Libéraux *Page 786 
projetée." He sold a number of lots according to that plan and in those deeds of sale mentioned the property as being located between certain streets and "`the contemplated continuation of Camp street, to be called Liberal street'". It was held that the dedication of that street did not result. The opinion of the Supreme Court, however, shows that when the owner agreed to dedicate that ground to public use, the city and certain persons who were interested, agreed in return to pay him $5,000, which was to be raised by subscription, but that the $5,000 was never raised and, therefore, the owner was never paid. The Supreme Court took this fact into consideration and said that because of the publicity which the whole scheme had been given there could be no doubt that the persons who bought those lots were well aware of the fact that the dedication of that ground for use as a public street was conditioned upon the payment to the owner of the said $5,000. The Court, referring to the plaintiff, said: "* * * With the knowledge which he had of the conditions under which alone the projected opening of the street was to take place, Armor could not surely have succeeded to the present suit; and the plaintiff, who claims under him, cannot have greater rights than him [he]. If her immediate vendor failed to acquaint her with the circumstances connected with the projected opening of this street, and she has, in consequence thereof, paid too high a price, or has suffered damage, her recourse, if any she has, must be against him, and not against the defendant."
It is true that defendants cite other authorities which seem to support their contention. For instance, in 26 Corpus Juris Secundum, Dedication, § 22, page 77, it is said that: "A plat indicating a mere prospective intention to dedicate does not of itself constitute an offer to dedicate."
In support of that statement we find cited several cases. But a careful analysis of those cases fails to disclose that any one is analogous to the case at bar and each one of them seems to present facts which would distinguish it. For instance, in New York S. W.R. Company v. Board of Public Utility Commissioners,90 N.J.L. 432, 101 A. 49, 50, the map relied on as effecting a dedication, contained "a declaration by the husband of the then owner that, if he ever opened the streets, the opening would conform to the map". Note the extreme uncertainty resulting from the use of the word "if".
Similarly, in Smith v. City of Kuttawa, 222 Ky. 569,1 S.W.2d 979, 984, one fact stands out and that is that there was a prospectus which accompanied the map relied on and which, in the following way, referred to the park which it was contended had been dedicated: "`This includes Lake Clough Park of 38.35 acres, which, as explained in the prospectus, belongs to the owners of the suburb till they elect to donate it to the town as a public park.'"
Counsel for defendants cite also Frank C. Schilling Company v. Detry, 203 Wis. 109, 233 N.W. 635; Exterkamp v. Covington Harbor Company, 104 Ky. 796, 47 S.W. 1086; DeCastello v. City of Cedar Rapids, 171 Iowa 18, 153 N.W. 353, and City of Brownsville v. West, Tex.Civ.App., 149 S.W.2d 1034, 1037.
From the last of these cases counsel for defendants quote extensively in their brief. There, in 1908, the owners of a tract of land outside of the city limits of Brownsville caused a survey to be made and divided the property up for the purpose of sale. On the plat they showed certain streets by name and they also showed a "proposed park". Some thirty years later, the city, having extended its limits so as to include all of this property, contended that the proposed park had been dedicated when the plat was made. The Court of Civil Appeals of Texas held that there had been no dedication. There were, however, certain facts to which the court pointed which may distinguish that case. For instance, in connection with the plat there had been a notarial act in which the owning company had declared "that all streets, roads and alleys as shown on the plat are dedicated as streets, roads and alleys * * * to the public forever * * *". No reference was made in that dedication to the "proposed park". The Court said: "* * * In the first place, there is a statement on the plat expressly dedicating all streets, roads and alleys shown on the plot, but no mention is made of the `Proposed Park.' It would seem that the rule `expressio unius est exclusio alterius' should be here applied. The fact that the streets, roads and alleys are expressly dedicated, would exclude the idea that the `Proposed Parks' were also dedicated. * * *" *Page 787 
Furthermore, the Court found that the city had used a portion of the said tract in a way which was inconsistent with its use as a park. And the Court also said that none of the persons who bought property, and, in fact, no one at all, had ever used the property as a park during the long period of time which had elapsed, and added that there was no evidence that the property owners "would be injured or inconvenienced if the parcel of land marked `Proposed Park' was not established as a public park."
But if that case cannot be distinguished then we find ourselves unable to agree with the conclusion reached there since we believe that under the circumstances shown here a dedication resulted from the sale of lots under the Rordam plan.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.