José J. Figueroa y Esteban Rodríguez Tizol, demandantes y apelados, *v.* Benjamín, Belén, Rosa, Pilar y Providencia Guerra Mondragón et als., demandados y apelantes.

Núm. 9728.—*Sometido:* Diciembre 3, 1948. *Resuelto:* Febrero 24, 1949.

*Ismael Soldevila,* abogado de los apelantes; *Guillermo S. Pierluisi,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Los demandantes son dueños de un solar con cabida de veinte metros de ancho por cincuenta de fondo, con frente a la Avenida Ponce de León, en la Parada 5 de Puerta de

Tierra, San Juan, y se extiende hasta la Calle San Agustín. Adquirieron este solar en 1946 por compra a Murray Orinstein, quien lo adquirió de la Iglesia Episcopal, la cual lo había venido usando durante muchos años. Una iglesia en ruinas que ya no se usaba enclavaba por largo tiempo en dicho solar.

Hace algunos años, al ocupar el edificio, la Iglesia construyó una verja de alambres. Luego, en alguna fecha entre 1920 y 1922, construyó en el mismo sitio una pared de concreto, de seis pies de alto. La verja y la pared no se construyeron en la colindancia del solar. Más bien fueron construídas dentro de la propiedad de la Iglesia. Esto trajo por resultado que una parte del solar perteneciente a la Iglesia—una faja de terreno de 2.70 metros de frente por 50 metros de fondo, que se extiende desde la Avenida Ponce de León hasta la Calle San Agustín—quedó fuera de la verja y de la pared.

Los demandados son dueños del solar contiguo, que mide también veinte metros de frente por cincuenta de fondo, y que se extiende asimismo desde la Avenida Ponce de León hasta la Calle San Agustín. Dicho solar contiene algunas casas viejas conocidas por ''El Laberinto''. La Iglesia construyó la verja y la pared debido a la conducta indeseable de la gente que vivía en ''El Laberinto''. Si bien pertenecía a la Iglesia y ahora pertenece a los demandantes, la faja de 2.70 metros ha sido usada durante un número de años por los inquilinos de las casas del ''Laberinto'', y por parte del público, como un callejón entre la Calle San Agustín y la Avenida Ponce de León.

Este pleito comenzó como una acción de deslinde radicada por los demandantes, pero a sugestión de la corte de distrito se convirtió en una acción de negatoria de servidumbre de la faja de 2.70 metros así como también de deslinde. Luego de un juicio en sus méritos, la corte inferior dictó sentencia concediendo el deslinde y también dispuso

que (1) no existe servidumbre de paso a favor del solar de los demandados sobre el solar de los demandantes; (2) la faja de 2.70 metros no ha sido consagrada al uso público; (3) no existe servidumbre de luces y vistas a favor del solar de los demandados sobre la propiedad de los demandantes; y (4) el solar de los demandados ha adquirido por prescripción una servidumbre para mantener y conservar aquellos balcones y escaleras o partes de éstos que el deslinde demuestre penetren la superficie o espacio del solar de los demandantes. El caso se encuentra ante nos al apelar los demandados de esta sentencia.

Señalan como error la resolución de la corte inferior al efecto de que no existía servidumbre de paso a favor del solar de los demandados como predio dominante sobre el solar de los demandantes como predio sirviente. Alegan los demandados que ellos gozan de esa servidumbre de paso basados en que se ha venido usando dicha faja desde tiempo inmemorial.

██ ██ La servidumbre de paso sólo puede adquirirse mediante título y no por prescripción. Artículo 475 del Código Civil, ed. de 1930; *Cabanillas* v. *Gelpí,* 65 D.P.R. 945, 947, y casos allí citados. Pero antes de 1889, cuando empezó a regir el Código Civil, tal servidumbre podía adquirirse mediante el uso desde tiempo inmemorial bajo la Partida III, tít. 31, ley 15. Por consiguiente, si el uso empezó antes de 1889, es de aplicación la Partida III, tít. 31, ley 15, y puede adquirirse la servidumbre de paso por prescripción, no obstante el hecho de que cuando comenzó a regir el Código en 1889, la servidumbre en cuestión no se hubiera "consolidado . . . por prescripción inmemorial." *Cabanillas* v. *Gelpí,* supra, pág. 947.

██ Sin embargo, no es suficiente con probar simplemente el uso con anterioridad al 1889. Tampoco basta con probar dicho uso durante muchos años. La prueba debe demostrar no solamente el uso antiguo, sino que nadie re-

cuerde cuándo empezó dicho uso. El uso debe ser desde tiempo inmemorial; es decir, durante tanto tiempo que "non se puedan acordar los homes". *Cabanillas* v. *Gelpí,* supra, 948; *Stella* v. *Blasini,* 61 D.P.R. 372, 382–3.

Convenimos con la corte de distrito en que la prueba de los demandados no cumplió con el requisito de uso desde tiempo inmemorial. Tres ancianos declararon en cuanto al uso del callejón para entrar y salir del "Laberinto". Pero todos declararon con sustancial precisión en cuanto a la fecha exacta en que empezó dicho uso. Toda vez que los testigos recordaban la fecha en que empezó el uso, sus declaraciones no lo establecieron desde tiempo inmemorial.

█ Otro de los errores se dirige a la resolución de la corte inferior al efecto de que no existía servidumbre de paso a favor del público en general por haberse consagrado al uso público la faja de terreno aquí envuelta.

Este Tribunal nunca ha resuelto si la doctrina de la Ley Común sobre la consagración al uso público se aplica en esta jurisdicción en todo su alcance y vigor. Nuestras leyes sólo contienen dos referencias indirectas sobre consagración. Véanse la sección 65(4) de la Ley Municipal, Leyes de Puerto Rico, 1906; artículo 464, inciso 37, Código de Enjuiciamiento Civil, ed. de 1933.([1]) Y en términos generales, la regla en esta jurisdicción es que los derechos sobre la tierra son creados mediante título. En los Estados Unidos continentales la consagración al uso público puede estar

---

([1])La sección 65 provee que el Concejo Municipal de un municipio queda autorizado para: "(4) Hacer que se inscriban como caminos municipales en la Oficina del Comisionado del Interior, todos aquellos caminos que hayan llegado a ser públicos por el uso, consagración, abandono al público o por cualquier otro medio determinado por la ley, y preparar e inscribir las escrituras adecuadas que a ellos se refieran;"

El artículo 464, al establecer presunciones controvertibles en la ley de evidencia, prescribe lo siguiente: "37. El uso no interrumpido por parte del público, durante cinco años, de un terreno para cementerio, con el consentimiento del dueño, sin que éste hubiere reservado sus derechos, constituye evidencia indirecta de su intención de dedicarlos al público para tal objeto."

predicada en un traspaso expreso. *Cf. Municipio de Río Piedras* v. *Río Piedras Development Co., Inc.,* ante, pág. 599. Pero en este caso se nos pide que resolvamos que, no empece la falta de un traspaso expreso, hubo una consagración implícita de terreno para uso público por actuaciones y conducta del dueño a base de *estoppel in pais.* Sin embargo, la consagración implícita es una doctrina que debe ser aplicada con mucha cautela en esta jurisdicción, donde aun los derechos privados de paso, excepto cuando la prescripción basada en uso desde tiempo inmemorial empezó a correr antes de 1889, pueden crearse bajo el artículo 475 del Código Civil solamente mediante escritura.

Este Tribunal ha resuelto dos casos en los cuales se ha adoptado en esta jurisdicción hasta cierto punto la doctrina de la Ley Común de la consagración implícita basada en *estoppel in pais. Municipio de Vega Baja* v. *Smith,* 27 D.P.R. 632; *Capella* v. *Carreras,* 48 D.P.R. 830.(²) El caso de *Capella* trataba de una situación especial. En él se adquirió un solar que formaba parte de una urbanización trazada de conformidad con un plano en solares, cuadras y calles. Obviamente, bajo tales circunstancias, un dueño de un solar no puede negarle a los dueños de los otros solares y al público en general, el derecho a usar las calles trazadas en el plano para beneficio de todos los solares. Todos los casos en que nos apoyamos en el caso de *Capella* envolvían planos similares. *Cf.* Anotación, 172 A.L.R. 167.

En el caso de *Smith* no se resolvió que la consagración fué de hecho probada. Sólo resolvimos que la demanda exponía una causa de acción. En consecuencia, revocamos una sentencia en excepción previa y devolvimos el caso para

---

(²)Si bien en el caso de *Stella* v. *Blasini,* 61 D.P.R. 372, se alegó que se había consagrado al uso público una servidumbre de paso, en él discutimos solamente el problema de si existía o no un derecho privado de paso en virtud de uso desde tiempo inmemorial. *Cf. Ramos* v. *Mayagüez Shipping Terminal,* 52 D.P.R. 225, 230.

la celebración del juicio. Y empleamos el siguiente lenguaje significativo, a las páginas 644, 645:

"En este caso el demandante, un municipio que no es un colindante, alega la existencia de un camino público que ha sido usado no con el mero consentimiento de la apelada como medio conveniente de entrada y salida de los terrenos en cada lado de la finca que pertenece a la apelada sino como un camino vecinal perteneciente a la municipalidad, que ha sido debidamente inscrito como tal, *respetado* por los causantes de la apelada y que forma el punto de enlace entre dos caminos públicos, uno de los cuales es la carretera insular. La prueba que pueda aducirse al juicio podrá demostrar que el supuesto camino no es en realidad un camino vecinal sino una simple servidumbre de paso privado; que los causantes de la apelada no lo respetaron ni tuvieron por tal camino público sino que meramente toleraron de vez en cuando o con más o menos frecuencia que algunos vecinos cruzaran por su finca. Pero el hecho de respetar un camino público como tal implica algo más que una simple tolerancia para transitar por determinado camino . . .".

■ En el presente caso ningún municipio sostiene que exista una carretera pública. Los demandados son dueños colindantes que tienen interés primordial en un derecho privado de paso por un callejón, no por una calle. El callejón se ha venido usando principalmente por las veinte o treinta familias que ocupan las casas en "El Laberinto". Es cierto que hubo prueba al efecto de que el callejón era usado también como cuestión de conveniencia por parte del público de esa vecindad para ir de la Avenida Ponce de León a la Calle San Agustín, y viceversa. Pero existen calles públicas cerca de ahí que ofrecen la misma conveniencia para estos fines. Y, si bien la opinión de la corte de distrito no es lo clara que pudo ser en cuanto a este punto, aparentemente llegó a la conclusión de que hubo una mera tolerancia o aquiescencia pasiva por parte de la Iglesia en relación con el uso de la faja de 2.70 metros como callejón para pasar por algunos miembros del público en general. Pero, se-

gún indica la anterior cita del caso de *Smith,* la tolerancia en cuanto a tal uso no es suficiente. Para que pueda existir la consagración implícita debe aparecer inequívocamente que hubo la intención específica por parte del dueño a consagrar su terreno al uso público. *Summerville* v. *Duke Power Co.,* 115 F.2d 440 (C.C.A. 4, 1940); *Simmons* v. *Perkins,* 118 P.2d 740 (Idaho, 1941); *Parker* v. *Fuller,* 28 So.2d 207 (Ala., 1946); *Lyons* v. *Schwartz,* 104 P.2d 383 (Calif., 1940); *Mulik* v. *Jorganian,* 37 S.W.2d 963 (Mo., 1931); 4 Mc Quillan, *Municipal Corporations, Revised Ed.,* pág. 727, *et seq.;* Burby *on Real Property,* págs. 362–3; XIII *Tulane L. Rev.* 606, 607. *Cf. Muñoz* v. *Porto Rico Ry., Light & Power Co.,* 74 F.2d 816, 820–21 (C.C.A. 1, 1934).[3] Además, los casos indican que es más difícil demostrar tal intención para consagrar un callejón, como ocurre en este caso, que cuando se consagran carreteras. Anotación, 58 A.L.R. 239. En ausencia de tal intención de parte de la Iglesia a consagrar al uso público la faja de terreno de 2.70

[3] Aun cuando discutía un derecho privado de paso en un área rural, el Juez Presidente Sr. Del Toro, hablando por el Tribunal en el caso de *Nadal* v. *Muratti,* 34 D.P.R. 251, empleó un lenguaje que también es pertinente aquí. Dijo el Juez Del Toro a la página 257:

"Claro es que el callejón que se venía usando resultaba más fácil. El hecho del paso por mera tolerancia se repite constantemente en las fincas de Puerto Rico. Las crecientes de ríos y quebradas, el mal estado de ciertos caminos vecinales, los atrechos, las amistades, el establecimiento de escuelas y comercios en determinados sitios, el temor de provocar conflictos o disgustos, el deseo de favorecer a los convecinos acortando distancias y facilitando el tránsito, y otras muchas circunstancias podrían señalarse como causa para ello. Seguramente fué una situación semejante y la idea de dar fijeza y certidumbre a un derecho para uno y a un gravamen para otro de tal importancia, la que obligó al legislador español a variar la ley y al legislador puertorriqueño a no alterar la variación. Así el paso que meramente se permite subsiste generalmente mientras de él no se abusa, como las pruebas demuestran que se abusó en este caso. Y así cuando se desea obtener un derecho absoluto y para siempre, se sabe que hay que ir al contrato, a la adquisición del derecho mediante la compensación apropiada, garantizando la ley hipotecaria por medio de la inscripción el derecho que se adquiera en cuanto a terceros. A partir del 1890 las situaciones vagas, indefinidas en esta clase de servidumbres, desaparecieron en Puerto Rico."

metros, resolvemos que la corte de distrito no cometió error al decidir que dicha faja no había sido consagrada para tal fin.(⁴)

 Finalmente, los demandados señalan como error la negativa de servidumbres de (1) luces y vistas rectas mediante puertas y ventanas que abren y se proyectan hacia la faja de terreno en controversia; (2) tejados y aleros; y (3) vertientes de tejados.

En cuanto a la parte (1), el término prescriptivo para la adquisición de tal servidumbre empieza a correr desde el acto obstativo del dueño del predio dominante. *Balzac* v. *Torres*, 68 D.P.R. 983 y casos citados. Y aquí, según dijo la corte inferior, ese acto obstativo nunca tuvo lugar.

En cuanto a las partes (2) y (3), según ya se ha indicado, este caso se originó como una acción de deslinde. Durante el juicio, a sugestión de la corte, las partes procedieron a litigar además la cuestión de la servidumbre de paso. Pero en el récord nada hay que indique que los demandados, en algún momento, ya sea en las alegaciones o en la prueba, alegaran en la corte de distrito que el solar de los demandantes estaba sujeto a las servidumbres contenidas en dichas partes (2) y (3). Por tanto, no vemos base en la cual los demandados puedan sostener esta contención por primera vez en apelación.

*La sentencia de la corte de distrito será confirmada.*

El Juez Asociado Sr. Negrón Fernández no intervino.

---

(⁴) Si hubiéramos resuelto que este callejón es un paso público, surgirían serios problemas. Por ejemplo, hay casos que resuelven que terrenos consagrados al uso público no pertenecen al público. El donante retiene el título. El público sólo tiene una servidumbre de uso, y la posesión revierte al donante si el uso público específico es abandonado. *Cf. Municipio de Río Piedras* v. *Río Piedras Development Co. Inc.*, supra, escolio 2. Si adoptásemos la regla establecida en dichos casos, ¿quién sería responsable del cuido del callejón y de las lesiones recibidas por dejar de cuidarlo? *Cf.* Anotación, 126 A.L.R. 443. Además, la planificación de calles y carreteras públicas sería entorpecida seriamente si la actuación de gente *particular* resultara como cuestión de derecho en crear calles o carreteras *públicas* que no cumplen con las normas exigidas actualmente.